Please be seated. Ms. Clerk, will you call the next case? 3-13-0014, People of the State of Illinois, Appellee by Gary Gavinovic v. Kristen Rennie, Appellant by Maureen Williams. Ms. Williams? Good morning, Your Honor. May it please the Court, Counsel, I'm Maureen Williams and I'm representing Kristen Rennie, the defendant in this case. I'll start with the Constitution. The Illinois Constitution states that all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offenders to a useful citizenship. In this case, a 16-year-old girl who got in an accident, had marijuana in her system, was sent to prison for six years. 85%. And if that is restoring an offender to useful citizenship, I don't know about it. The seriousness of the offense, I'd like to touch on that. If the statute is per se guilt, if the person has marijuana in their system, then it implies that impairment is not a necessity. If this girl was not impaired, as the facts show, according to an officer that was on the scene immediately, then there's a chance it was purely an accident. If this was an accident, that means it was not deliberate. If this was not deliberate, it means it was not a serious offense. Just because it was not a serious offense does not mean there was not a serious result. Kristen rolled the dice when she smoked marijuana and got behind the wheel because of this per se law. Strict liability, simply because of the presence of marijuana in her system. I asked this court to reverse the trial court and find that there were in fact extraordinary circumstances in this case. It reminds me of the Justice Stewart case. When you bring up this case to a lay person, they immediately invoke God. Oh my God, I can't believe this happened. A child, 16 years old, six years in an adult prison. The facts show that she was an inexperienced driver. She only had her license two weeks, first time driving at night. I can speak from experience. I have a daughter that's ready to be a driver in three weeks. Good luck to you. It's not pleasant. I'm already worried. I have three weeks. The state claims in its brief when I asked for this court to understand the juvenile element. That's what should have been considered in this case. The state writes, problem with the juvenile element, while age can be a mitigating factor in terms of sentencing in general, age alone is not the type of highly unusual factor, event, not commonly associated with this type of event that satisfies the statutory extraordinary circumstances exemption contemplated by legislature. What was the sentencing? We've got to find the sentence in the abuse of discretion, right? Correct. What's the sentencing range? It was between three and 14 years, or extraordinary circumstances would mean probation. So the mid-range would be about eight years, right? How can you say the sentence is below the mid-range, below the middle, is an abuse of discretion? I'm claiming that because I believe extraordinary circumstances are warranted. So you're saying it was abuse of discretion not to award probation? Correct. So it's not the sentencing range or anything? Your position is that it's the denial of probation for this defendant that was in abuse of discretion? It was that, and then if that doesn't fly, the next best effort, she should have been given three years, the minimum, if she could not find probation. Do you think there's any value, and I'm sure you're going to sentence this to tell kids, like your daughter who's about to start driving, this is what happens if actions have consequences. You kill somebody and those consequences are severe, and that's part of the sentencing philosophy, right? That is correct. I believe the fact that this girl has to live the rest of her life knowing that the death was caused, even if it was strictly an accident, she'll go through life with others thinking she caused an accident because she simply had this in her system. I believe, I think a lot of kids don't even know that they can smoke pot on day one, 30 days later, they could be arrested with an aggravated DUI. I don't think they know this. But that wasn't the evidence in this case, that the last dope she smoked was 30 days earlier. No, she admitted she smoked that day, it wasn't much, she did admit it, but they didn't find a lot in her system. And the main thing is, they did not find that she was impaired. If the officer found that she was impaired, he would have written it all over his report, he would have testified, he would have come into sentencing, testified, it would have been all over the map. None of that happened, because he testified she was not impaired. But this is a strict liability crime, isn't it? It is. But because it's a strict liability, that means she's guilty. It doesn't necessarily mean she was impaired. Facts show she wasn't impaired. So you're arguing that the lack of evidence of impairment should go to a sentencing decision made by the trial judge? I am, Your Honor. And so you're saying it's abuse of discretion not to weigh that as an important factor in making that sentencing decision? I am. When the state says this is not the type of highly unusual factor, there is not a case, you can't find a case that shows extraordinary circumstances. At least I couldn't find one. There was a trial court decision, but this trial court in Kristen's case did not want to hear about it. And that was the Lucas case. Judge Lucas decided this, I'm blanking out on the name, I can't write it down, but he just basically said hypoglycemia could have caused this accident. He was basically saying he blanked out, it could have been a freak accident. Similar facts to this case. We don't know from what, when you piece it together you have a road that was, I mean in Illinois for them to decide to tear up a road, this road had to have been bad. It was not marked. And it's like, well it's a nice defense argument. But it's a very big fact to be traveling on a road at night, unmarked. She had an optical illusion. She believed the motorcycle was part of the car behind her. She just saw the one light and she thought it was part of, it could happen to anybody. But the fact that she had marijuana in her system, she's out of luck, she rolled the dice, she's guilty of this. So what you're saying, one of the factors is the inexperience of the driver in the night driving situation. I am, Your Honor. I'm saying that should have been elevated. The fact that the first time she had been driving at night, the fact that she was 16, I am a firm believer that you can't be a decent driver for a good five years after you get your license. You can't teach someone when you're approaching an intersection, that car over there, he's going to be doing this. You don't get that sense until you've had experience driving. When the state feels that this does not qualify for extraordinary circumstances, I'd like to know what case would qualify for extraordinary circumstances. If this one doesn't, as much as my brief was quoted in the state's brief, the state's brief is glaringly deficient for mentioning, it does not mention Miller v. Alabama. And that's the Supreme Court case where they mention the difference between children and adults, as if this is new. They cite Graham and say, developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. They go on to say the case for retribution is not as strong with a minor as with an adult. It should have been taken into account. How do you know it wasn't taken into account and that's the reason she got 6 instead of 14? I can only determine what the judge was thinking from the transcript. She listed two aggravating factors and three mitigating factors. The two aggravating factors, one, defendant's conduct caused and threatened serious harm. That was not even allowed under Saldivar. It was an impermissible double enhancement. The state says, well, that's okay under Saldivar because the court can take into account the degree of harm. That's not what happened in this case. The trial court just said the defendant caused or threatened serious harm. It was already an element. The court did not mention the degree of harm caused to the victim. The second way that the trial court erred claimed that Kristen was impaired. There's nothing in the record that says that. Because the statute is strict liability, they can't have it both ways. They can't say because it was in your system, you must be impaired. It just says if it was in your system, you're guilty. It does not say she was impaired. There were no witnesses that came forward to say she was impaired. In the state's brief, they go on to say if the driver was sober this and if the driver was sober that. You can't assume that. It wasn't necessary for the conviction. The only thing that was necessary was that she had even a small amount of marijuana in her system. And the other part that the trial court was not aware that this was an 85% sentence. Case law has already decided that it doesn't matter if the defendant knows that there was an 85% and the defendant would not get day-for-day credit. But case law does not address whether it's important whether the trial court knew she was handing out an 85% sentence. How do we know the trial court didn't know that? It was brought up after the fact. It was corrected after and it was one of the issues for a motion for reconsideration. The trial attorney for Kristen actually came in and said he rendered ineffective assistance because he did not tell her about the 85%. But if the court is to rely on reliable information, we have to go back and say the court thought she was handing out a sentence where this girl would get 50% of her sentence. In fact, she didn't. She got 85%. The two aggravating factors that were relied upon, as I mentioned... This was pointed out in the context of a reconsideration motion? Yeah, the fact that it was 85% not day-for-day. Okay, and the trial court was aware of it at that point, am I correct? After sentencing, when it came... But could have reconsidered and resentenced, am I correct? That is correct. And did not do so. Did not do so. But again, how do we know the court didn't do so? There are many reasons why. Maybe safe base. A lot of trial courts won't even consider an argument for reconsideration. Counsel, that's two minutes. Thank you. The second factor in aggravation besides the fact that the first one, defendant conduct caused or threatened serious harm, the second factor in aggravation was this is necessary to deter others from committing the same crime. The Miller v. Alabama cites Graham and states that the same characteristics that render a juvenile less culpable than an adult, their immaturity, their recklessness, their impetuosity, make them less likely to consider potential punishment. They have an inability to assess consequences. I don't believe that's anything new. It's a given. The court relied on three cases, Vasquez, Willingham, determined, well, none of these show extraordinary circumstances. And then she used those to deny it in this case. Vasquez had to do with an erratic driver. She piled nine kids in a car. Willingham was going 81 in a 55. The trial court assumed that Kristen was an adult. She was under the influence, and she assumed that she was an experienced driver. Well, as far as erratic driving, I mean, your client was on the wrong side of the road, correct? Correct. It was a curve, Your Honor, and it was unmarked, and it was at night. It's just, you know, we can't recreate the accident, but accidents happen all the time, especially when you have an unmarked roadway. The court determined, the trial court failed to find extraordinary circumstances because she couldn't find it in the case. But, you know, a person receiving probation is not likely to bring it to the court of appeals and say, and so that's, it's up to this court to determine what is extraordinary, what are extraordinary circumstances. So you're saying taking Vasquez and Willingham, clearly these, arguably, one would say impairment, you could take judicial notice of impairment given the BAC level in both those cases. And that is correct, Your Honor, and that's how this case is different. They can't show impairment in this case, in Kristen's case. Abusive discretion is our review standard, correct? Mm-hmm. And how do you understand that in ordinary language, that standard? What is it, it's a low threshold, obviously. I mean, very favorable to the trial court. Is it that no rational person would have entered this sentence? Yeah, thank you, Your Honor. I would believe, I believe that. I mean, it's been stated in case law that seems to be what the court must conclude. I don't think it's a stretch to find that in this case. The cases are different from the other cases where they failed to find extraordinary circumstances. This girl, she was not impaired in that it was an accident. Counsel's term is up. Thank you. Thank you, Ms. Williams. Mr. Grunewald. May it please the court, counsel. Thank you. The statute under which the defendant was convicted here does not require any kind of impairment. Basically, it does not require impairment. If you have any amount of a particular substance at the time, it's a strict liability offense. And the Supreme Court in People v. State addressed what was then chapter 95 and a half, 11501, criminalizing the act of driving a motor vehicle with any amount of a drug or substance or compound in the person's blood or urine resulting from the unlawful use of said drug or substance or compound. And they found that the legislature had a legitimate reason for passing such a statute, for making it a strict liability, for making it such that you don't have to pay. But that's not under review as to whether it's a strict liability. No, no, no. Under review is this sentence. No, that's true. But the argument here is the argument that counsel would make. A lot of it is always talking about, well, there's a lack of impairment. There's a lack of impairment. Well, there's a reason why the statute is drafted for a lack of impairment. And that's kind of sort of where I'm kind of driving at at this point, is the fact that the Supreme Court cited three reasons. One was the number of contraband items and drugs that are prevalent in society. But two, it was the difficulty in measuring the concentration with precision from the blood and urine samples, as well as the variation in the degree of impairment from drug to drug as well as from person to person. Part of the problem, part of the thing here is the fact that with any particular substance, anything like that, you see this all the time, for example, with intoxication offenses. There are different levels of intoxication. There are different levels there. In this case, if you take a look at the facts, if you look at the circumstances, this 16-year-old drove her car in a completely other lane of traffic, striking a motorcycle, seriously injuring the driver, killing the passenger who was the driver's wife. Counsel talks about extraordinary circumstances. Other than the fact that there's no impairment, and other than the fact that she was 16 at the time and citing her lack of experience, which I don't even think even qualifies for that, there's nothing here that's extraordinary. There's nothing here that's unusual, that's beyond what you would consider to be, I hate to use the word the norm, in a situation like this. There's nothing extraordinary. Her age alone is not extraordinary. She's 16, she had a license. The comment that the road was unmarked. If you take a look, there was a CV that was made by the defendant's father.  And if you take a look at it, yes indeed, no, no, this is not the best repaired road. The middle center line was pretty much undetectable. The thing is, the road was not unmarked. You still can obviously see, and if at any time with respect to your driver's death, you can see the white painted line on the exterior of the roadway. Yes. No, no, I'm not saying that. What I'm saying is, that is a marker of where the roadway is. If she's all the way in somebody else's lane, that fog line is going to be on her driver's side. Okay, so the undisputed evidence is that her vehicle was in the oncoming lane entirely? Totally. Totally. Totally. Okay. And so, as I'm sitting here listening to counsel's argument, it kind of reminds me, you know, it's kind of like, because she's young, because she's inexperienced, does she get one free accident? Didn't we all? I don't know about that. Okay. No comment on this. The thing, the point here is, the fact that, again, simply because of her age, age alone is not something unique. She was conducting what I would label as an adult activity. There's no cumulative effect of all of these things. That's true, but she's involved in an adult activity, right? And, theoretically, I'm not saying that smoking marijuana is an adult activity, but she made a bad choice. But, then again, make bad choices, a lot of people make bad choices, simply because of the fact that she's 16. What happens if she was 17? Would that make a difference? Would 18 even make a difference? Well, let me, I don't get the no evidence of impairment. I mean, paint reasonable people, even though you've got other arguments, that it was the road and the age and all that. Isn't driving on the wrong side of the road some evidence of impairment? That's what I was trying to take and use with respect to my brief, is the fact that when counsel said I was thinking about sober, yes. I mean, the fact that she did realize where she was, even considering the physical outlay of everything, the fact, like I said, with the fog lines, if you're cognizant of what's going on, if you're aware of what is happening, you still have a perception of where your half of the road is, even if there's no center line. I mean, you can go down any county road. I take the back way sometimes to go to lab, going on, and then the back road, the county road, there's no marking at all. Yet, I know where half of the road is. Okay? And so I... Are you saying, maybe I'm misunderstanding or misremembering facts, but she was actually driving on the left side of the road, or she just crossed the road and hit the car? The way they explain it is she apparently came across, apparently at one time she was in her own lane when she got to this curb. Apparently she eventually ended up into the other lane, and I believe the way the motorcyclist explained it, he tried to get over as far as he could at the fog line because she was completely in his lane. At some point in time, she completely crossed over and was driving in the left lane. Okay, so she was... NASCAR does that all the time, as you're going into a curb, right? When you don't stay on the outside of the curb, you go towards the... You know. But everybody's going in the same direction. Well, I understand that. But how many curves do ordinary drivers take? That I don't know. I know I try to take and stay in line. I pretty much stick to them. I pretty much stick to them. Anyway, so you're saying, at least for... I'm sure this all happened in a period of about four seconds, but for some second or two, she was actually driving in that lane, not that she simply crossed over. It wasn't a sudden... At one point, and hit the motorcycle. It wouldn't be like a sudden jerk. Or you would know it. To be honest with you, from the way that I recall the testimony, it sounds more like to me that she was taking the curve, and what she actually did is she was actually in the left lane and was driving in the left lane because the motorcyclist said, I saw her coming. It wasn't like she swerved. It wasn't like there was a pothole she was trying to miss or a rabbit ran in front of her or anything like that, or a dog. It was like she was in the lane, and he tried to take and get as far over as he could without going off the road or whatever the situation was, and that's when she... And he was coming into a curve, too. Yes. Okay. So... Now that's... So, again, simply with respect to the aspect of the extraordinary circumstance in the sentencing, simply put, I don't think that there was any extraordinary circumstances here. I don't think there's anything... I think the trial judge properly balanced everything. I think the reason why this 16-year-old didn't get 8 years, 10 years, 12, or 14 with this particular type of accident is based on her age, based on her own experience. And I don't think that simply because the trial judge didn't mouth this and articulate this, I don't think necessarily it's something we could presume he did not consider. I think under the circumstances, this sentence is reasonable. It is not an abuse of discretion by any stretch of the imagination considering the facts of this particular case. So we would simply ask the court to take and conclude that the trial judge didn't abuse them to affirm the sentence. What about the knowledge or lack thereof of the actual time being served, given that that seemed to be... You know, that's kind of a two-way store because I've dealt with cases when the trial judge considers that and then defendants argue, well, the trial judge considered the fact that I'm only going to serve 50%, so instead of giving me 4 years, he gave me 8 years. So it's one of those factors that I don't think the trial judge has to even... I don't think he has to consider that. I don't think he has to take and factor that into a sentence. I think what he has to do is he looks at the potential for rehabilitation. I think he compares that with the facts of the case and deterrence and everything else and comes to their decision, whether it's 85% or 50%. If the trial judge chooses to do that, I will say that's within his discretion, but I don't think it's mandatory. I don't think it definitely affects the outcome of the sentence or makes it an abuse of discretion or something we should send back to have him articulate that I did or didn't consider. Well, in fact, when trial judges, as they probably most do, consider whether it's 50%, 85% or whatever and forming a sentence, it's really an end around the legislative intent. Whatever the sentence is, we want them to serve 85%. Well, they work at it backwards how long I want them to spend it. So that's really not a big factor, is it? No. I don't think it's one way or the other. I just know that there are other times when a judge has considered it and will say something on the record, then we get an issue that says, well, he abused his discretion because he considered this. He gave me a higher sentence than he normally would have. He should have just considered this. So it's one of those, depending on what side of the fence you're on at a particular time, dictates your argument. Other than that, do we have to answer any other questions? If not, thank you. Thank you, Mr. Kinnear. And Ms. Williams, any rebuttal? No rebuttal. No rebuttal, okay. All right. First of all, I want to thank you both for your argument today. We will take this matter under advisement.